LOUISIANA & TEXAS LUMBER CO. v.
SOUTHERN PINE LUMBER CO.
et al.   (No. 6699.)

(Court of Civil Appeals of Texas.  Galveston.
Oct. 29, 1914.  Rehearing Denied
Nov. 25, 1914.)

1. WITNESSES (§ 240*)—EXAMINATION—LEADING QUESTIONS.

A question, asking whether witness' husband, prior to his death, purchased or acquired by deed the interests of his brothers and sisters in the land in controversy, and, if yea, whether witness saw any such deeds, it being claimed that the deed or deeds were lost, which the witness answered in the affirmative, was not objectionable as leading, since a question will not be condemned as leading though it admits of an answer "yes" or "no," if only one material fact is elicited and the form of the question does not suggest the answer.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–839, 841–845; Dec. Dig. § 240.*]

2. EVIDENCE (§ 471*)—OPINION EVIDENCE—OPINION OR CONCLUSION.

The question was not further objectionable as calling for the conclusion or opinion of the witness; her answers thereto so far as responsive being statements of fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

3. ACKNOWLEDGMENT (§ 36*)—CERTIFICATE—SUBSCRIBING WITNESS—SIGNATURE OF WITNESS—REQUEST OF GRANTOR.

Where an officer's certificate to a deed recited that the witness who proved the deed stated that he "was present and saw the grantor sign and deliver the instrument for all the purposes and considerations contained and expressed as witness at the request of the grantor," it was not objectionable for failure to sufficiently show that the witness signed the instrument as a witness at the grantor's request.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 181, 182, 184–198, 221–223; Dec. Dig. § 36.*]

4. APPEAL AND ERROR (§ 1050*)—RULINGS ON EVIDENCE—PREJUDICE.

In trespass to try title, defendant could not successfully object on appeal to the introduction of a deed in evidence, where there was nothing in the statement under the assignment of error to show that plaintiff's title to any part of the land in controversy depended on the deed or was in any way affected thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

5. TENANCY IN COMMON (§ 55*)—RIGHTS OF COTENANT—RECOVERY OF LAND.

A cotenant may recover the whole property as against one showing no title.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 140–156; Dec. Dig. § 55.*]

6. VENDOR AND PURCHASER (§ 224*) — INNOCENT PURCHASER — ADMINISTRATOR'S DEED.

An administrator's deed purporting to convey only whatever interest the estate might have in the land in controversy was prima facie only a quitclaim and insufficient to support a plea of innocent purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 469–473; Dec. Dig. § 224.*]

7. EXECUTORS AND ADMINISTRATORS (§ 388*)—SALE OF LAND—INNOCENT PURCHASER.

A purchaser of land at an administrator's sale, notwithstanding the form of the deed, may be an innocent purchaser if the probate proceedings and the facts attending the sale show it to have been the purpose of the administrator to sell and of the purchaser to buy the land described in the deed, and not a mere chance of title and the purchaser had no notice of any adverse claim.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

8. EXECUTORS AND ADMINISTRATORS (§ 148*)—SALE OF LAND—TITLE ACQUIRED.

Where intestate long prior to his death had conveyed the land in controversy by a deed of record, and a purchaser at a subsequent sale of the land by the intestate's administrator knew at the time of the purchase that intestate

did not own the land, no title was acquired by the sale or the administrator's deed conveying the estate's interest therein.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 595–601; Dec. Dig. § 148.*]

9. EXECUTORS AND ADMINISTRATORS (§ 388*)—INNOCENT PURCHASER.

Where an administrator's deed only purported to convey the title of the estate, and the grantee knew when he purchased that the intestate had conveyed the land long prior to his death, the deed was sufficient to put a subsequent purchaser on notice, so that he could not acquire title as an innocent purchaser or acquire a better position than his grantor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

10. TRESPASS TO TRY TITLE (§ 41*)—FINDINGS—EVIDENCE.

In trespass to try title, evidence *held* to sustain a finding that the heirs of a prior owner, other than H., conveyed their interests in the land to him.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

Appeal from District Court, Houston County; John S. Prince, Judge.

Trespass to try title by the Southern Pine Lumber Company against the Louisiana & Texas Lumber Company and others. Judgment for plaintiff, and defendant Lumber Company appeals. Affirmed.

See, also, 147 S. W. 604.

Nunn & Nunn, of Crockett, for appellant. Adams & Young, of Crockett, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by the appellee Southern Pine Lumber Company against appellant, Louisiana & Texas Lumber Company, and appellee Paul Durham, for the recovery of the W. T. English survey of 707 acres of land in Houston county. The appellant answered in the court below by general demurrer, disclaimed title as to all of the land sued for except two tracts, one of 546.9 acres and the other containing 50 acres. As to these tracts appellant pleaded not guilty, and also that it was an innocent purchaser in good faith for a valuable consideration and without notice of appellee's claim. The appellee Durham answered by general demurrer, general denial, and plea of not guilty. Upon the trial of the cause it was agreed that the title to only 160 acres, a part of the 546.9 described in appellant's answer, was involved. The trial in the court below without a jury resulted in judgment in favor of plaintiff for the 160 acres of land in controversy.

The evidence sustains the following conclusions of fact: The W. T. English 707-acre survey of land, of which the 160 acres in controversy is a part, was patented to Jesse Duren, assignee of said English, on September 23, 1871. By deed of date March 8, 1860, Duren conveyed the 160 acres of said survey in controversy in this suit to Joseph Luce, Sr. This deed was duly recorded in Houston county in May, 1862. The deed records of said county were destroyed by fire in 1865. The deed was recorded in 1874, and the record thereof again destroyed by fire in 1882. It was again recorded in 1900. After the death of Joseph Luce, Sr., and his wife, the 160 acres was conveyed to his son, Hiram Luce, by all of the other children of the deceased Joseph Luce and wife. This conveyance has been lost or destroyed and is not of record in Houston county. On May 15, 1901, after the death of Hiram Luce, his widow and heirs conveyed the 160 acres to Dolly Shelton. By deed of date June 21, 1902, Dolly Shelton conveyed said tract of land to A. Harris & Co., and A. Harris & Co. conveyed it to plaintiff by deed of date June 14, 1905, for a consideration of $13 per acre, which was paid by plaintiff. Jesse Duren died prior to 1877, and his estate was administered in the probate court of Houston county by W. H. Cundiff. Acting under an order of said court which directed him to sell the lands of said estate for the purpose of paying its debts, the administrator, after due notice, sold said lands on the first Tuesday in April, and J. C. Wooters became the purchaser. The report of this sale was duly made and the sale was confirmed by the court. Among the other lands purchased by Wooters and conveyed to him by the administrator's sale was the following:

"All the interest the estate may have in and to the Wm. T. English grant, containing 707 acres of land lying and being situated in Houston county, Texas."

The words "containing 707 acres" in the above description were interlined in the original deed. As this deed appears upon the record the interlineation is as follows: "Containing 177 acres." The trial court finds, and the finding is not challenged by appellant, that the figures 177 are altered in the original deed after its record to 707. The trial court further finds that when Wooters purchased the lands of the Duren estate and took the deed from the administrator he had actual and constructive notice that Duren had parted with his title to the 160 acres of land in controversy. This finding is not questioned by appellant. On December 28, 1899, the appellant by its agent, R. H. Keith, purchased from Wooters a tract of 546.9 acres of the Wm. T. English survey, paying therefor the sum of $1,367.25. The 160-acre tract in controversy was included in the 546.9 acres described in and conveyed by the deed to appellant by Wooters. At the time he made this purchase Keith had no active notice of the claim of those under whom appellee holds title.

[1] The first six assignments presented in appellant's brief complain of the ruling of the trial court in admitting in evidence over

appellant's objections certain questions and answers contained in the depositions of Sarah Huling, who was formerly Sarah Luce, wife of Hiram Luce. The first assignment complains of the ruling of the court in not sustaining appellant's objection to the fourteenth interrogatory and the answer of the witness thereto. This interrogatory and the answers of the witness are as follows:

"State whether or not your husband, Hiram Luce, prior to his death and subsequent to the death of his father or mother, purchased or acquired by deeds in writing, or through the partition of his father's and mother's estate, the interest of his brothers and sisters in and to the Joseph Luce, Sr., 160-acre survey of land made out of the W. T. English survey in this suit, and being the land conveyed by you and your children to Dolly Shelton, by deed dated May 15, 1901. If yea, then please state as to whether or not you ever saw any deed or deeds from the other children and heirs of Joseph Luce, Sr., to Sarah Luce conveying their interest in and to said 160 acres of land?

"Yes, my husband, Hiram Luce, purchased the interest of the other heirs of Joseph Luce, Sr., in and to 160 acres of the W. T. English survey, the same land that myself and the other heirs of Hiram Luce afterwards conveyed to Dolly Shelton. He paid the other heirs fifty ($50.00) dollars apiece for their interest in the land. I remember that he gave Katy Allen a horse valued at fifty ($50.00) dollars for her interest in this land. He got a deed from most of the heirs to this land and I think from all of them, but I can't state for sure about the deed from all of them. I know he bought each heirs' interest in the land and paid fifty ($50.00) dollars each. I know most of them made a deed conveying their interest in this land for I have seen such deed, but can't remember whether all of them had signed it or not."

The interrogatory was objected to on the ground that it was leading and assumed that Hiram Luce had acquired the land inquired about in one of the ways mentioned "and further assumed that it was the same land conveyed by witness and her husband to Dolly Shelton by deed of date May 15, 1901, all of which calls for the conclusions and opinion of the witness and does not call for the facts about which the witness would be competent to testify." The answers of the witness were objected to on the ground that they were not responsive to the interrogatory and that the proper predicate had not been laid for the introduction of such testimony.

The court did not err in overruling these objections. We do not think the first question contained in the interrogatory properly admits of the answer "yes" or "no"; but, if it does, only the one material fact whether or not Hiram Luce acquired by deed or partition the interest of the other heirs of his father and mother in the land mentioned in the interrogatory was elicited by the question, and the form of the question was not such as to suggest the answer desired.

The weight of authority supports the rule that a question is leading which embodies a material fact and admits of a simple affirmative or negative answer. But this rule has been modified by the decisions of our Supreme Court to the extent that a question will not be held leading because it admits of the answer "yes" or "no" if only one material fact is elicited by the question and the form of the question does not suggest the answer. Cunningham v. Neal, 49 Tex. Civ. App. 613. 109 S. W. 455; Lott v. King, 79 Tex. 292, 15 S. W. 231; Railway Co. v. Dalwigh, 92 Tex. 655, 51 S. W. 500; Railway Co. v. Lowe, 97 S. W. 1087; Railway Co. v. Collins, 33 Tex. Civ. App. 58, 75 S. W. 816; Bryan Press Co. v. Railway Co., 110 S. W. 99.

[2] The land inquired about was the land conveyed by the witness and the heirs of Hiram Luce to Dolly Shelton, and the interrogatory properly so described it. The question did not call for the conclusion or opinion of the witness, and her answers thereto, which were responsive to the question, were statements of fact and not expressions of opinion or conclusions. The loss of the deed and diligent and unavailing search therefor was shown by testimony of this witness, and this entitled plaintiff to prove the contents by parol evidence.

The questions presented by the second, third, fourth, fifth, and sixth assignments need not be discussed in detail. None of the testimony, the admission of which is complained of, was objectionable upon any of the grounds set out in the assignments, and each of said assignments is overruled.

[3] The seventh assignment complains of the ruling of the court in admitting in evidence the deed from Jesse Duren to Joseph Luce over appellant's objection that it was not properly proven for record. The deed was proven for record by a subscribing witness. The certificate of the officer recites that the witness stated:

"That he was present and saw the grantor sign and deliver said instrument for all the purposes and considerations contained and expressed as witness at the request of the grantor."

As we understand the assignment, the objection made to the certificate is that it does not show that the witness signed the instrument as a witness at the request of the grantor. The objection was properly overruled. The statement of the witness above set out shows that he was present as a witness at the request of the grantor and saw him sign and deliver the instrument, and the name of the witness appears upon the instrument as a subscribing witness. We think the certificate of proof is in substantial compliance with the statute. The assignment is overruled.

[4, 5] The eighth assignment of error cannot be sustained. If it be conceded that the deed mentioned in the assignment was not admissible over the objection made by appellant, there is nothing in the statement under the assignment to show that the title of appellee to any part of the land in controversy depended upon this deed or was in any way affected thereby. It is probable that a search through the record, which we do not

feel called upon to make, would disclose that the grantors in this deed were two of the heirs of Hiram Luce and as such held an interest in the land. If this is true, and their interest did not pass by the deed, they are tenants in common with appellee, and, appellant having shown no title to the land, appellee as against appellant was entitled to recover the interest of its cotenants.

[6, 7] We cannot agree with appellant's contention, made under its ninth assignment of error, that the undisputed evidence sustains its plea of innocent purchaser in good faith. The deed from the administrator of Duren's estate to Wooters, under which appellant claims, only purports to convey whatever interest the estate might have in the English survey, and is prima facie only a quitclaim deed which would not support the plea of innocent purchaser. But notwithstanding the form of the deed, a purchaser at an administrator's sale might be an innocent purchaser if the proceedings in the probate court and the facts of the entire transaction showed that it was the purpose of the vendor to sell and the intention of the purchaser to buy the land described in the deed, and not a mere chance of title, and such purchaser had no notice of any adverse claim to the land.

[8, 9] The proceedings in the probate court in regard to the sale in question do not appear in the record; but, as before stated, the trial court finds that Wooters knew at the time he purchased that the estate did not own the 160 acres in question, and the undisputed evidence shows that Duren had conveyed the 160 acres to Luce long prior to his death, and this deed was of record in Houston county at the time of the administrator's sale to Wooters. The estate having no title to the 160 acres of land in controversy at the time of the sale of its interest in the survey to Wooters, and the deed only conveying the interest in the survey owned by the estate, Wooters, regardless of the question of notice, acquired no title to the 160 acres by the deed from the administrator. The character of the deed was such that any purchaser from Wooters was put upon notice that he only acquired title to whatever interest in the property the estate owned at the time of the sale, and such purchaser could not under this deed acquire title as an innocent purchaser in good faith to land in said survey not owned by the estate at the time of the sale to Wooters. A purchaser from one holding under a deed of this kind is in no better position than the vendee in such deed. Harrison v. Boring, 44 Tex. 255; White & Newman v. Frank, 91 Tex. 66, 40 S. W. 962; Hitchler v. Scanlan, 15 Tex. Civ. App. 40, 39 S. W. 633.

[10] The remaining assignments complain of the judgment on the ground that the evidence is insufficient to sustain the finding of the court that the heirs of Joseph Luce, Sr.,

other than Hiram Luce, conveyed their interest in the land to said Hiram. Mrs. Huling, the surviving wife of Hiram Luce, testified positively that Hiram Luce purchased the interest of the other heirs in the land and received a deed from them therefor; that she saw the deed and had it in her possession; and that she had lost it or it had been unintentionally destroyed with other papers of her deceased husband. Her testimony as to the loss of the deed and her search therefor was amply sufficient to admit parol proof of its existence and its contents. Her statement that such a deed was in fact executed and delivered is uncontradicted and fully justified the finding of the court upon this issue. If any of the heirs of Joseph Luce failed to execute the deed, they are tenants in common with appellee, and the latter was entitled, as against appellant, to recover all of the land.

We are of the opinion that the judgment of the court below should be affirmed, and it has been so ordered

Affirmed.